ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)           ASBCA Nos. 61292, 61828
Ken Laster Company )
)
Under Contract No. W9l2BV-09-D-1013 )
            Task Order No. 0003 )

APPEARANCES FOR THE APPELLANT:        Maria A. Luckert, Esq.
                                      Cody A. Reese, Esq.
                                        Barber & Bartz
                                        Tulsa, OK

APPEARANCES FOR THE GOVERNMENT:       Michael P. Goodman, Esq.
                                        Engineer Chief Trial Attorney
                                      Jennifer A. Aranda, Esq.
                                        Engineer Trial Attorney
                                        U.S. Army Engineer District, Tulsa

OPINION BY ADMINISTRATIVE JUDGE SWEET

These appeals involve Contract No. W912BV-0-D-1013 (1013 Contract) Task Order No. 0003 between appellant Ken Laster Company (Laster) and the Army Corps of Engineers to repair service gates, liners, and discharge conduits at Pine Creek Lake, Oklahoma and Tenkillers Lake, Oklahoma. Laster completed the work late, and the government assessed liquidated damages. Laster appeals the contracting officer (CO) final decision (COFD) affirming the liquidated damages assessment. Pursuant to Board Rule 11, the parties waived a hearing, and instead submitted the appeal on the record before the Board.

In its Rule 11 brief, Laster argues that the liquidated damages assessment was erroneous because the delays underlying that liquidated damage assessment were excusable.[1] The government responds that there was no excusable delay. For the

_____

[1] Laster merely challenges the liquidated damages assessment. It does not seek any compensation for any delays (R4, tab 15 at 4216). Moreover, in its clarifying claim, Laster asserted that the government's failure to provide stop logs, water releases, and over-inspection of welds and brass seals/bolts also delayed performance (*id.* at 4215). However, Laster did not raise those grounds in its Rule 11 brief (app. br. at 7). Therefore, we deem those grounds waived. *Abbott Lab. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355 (Fed. Cir. 2003).

reasons discussed below, we find that there was no excusable delay.  As a result, the government properly assessed liquidated damages, and we deny the appeals.

FINDINGS OF FACT

*I. Background*

1.  On September 19, 2009, the government awarded the 1013 Contract to Timco Blasting and Coatings (Timco) (R4, tab 3B at 156).  The parties subsequently modified the 1013 Contract to correct the awardee to Laster (R4, tab 3F at 241).  The 1013 Contract was a multiple award task order contract for the preparation and painting of large industrial and hydraulic stationary and floating structures (R4, tab 3B at 155).

2.  The 1013 Contract incorporated Federal Acquisition Regulation (FAR) Clause 52.211-12, Liquidated Damages—Construction (SEP 2000), which required Laster to pay liquidated damages if it failed to complete the work within the time specified in the 1013 Contract (R4, tab 3B at 172).

3.  The government awarded Task Order No. 0003 under the 1013 Contract to Laster for repairs to the structures at Pine Creek Lake, Oklahoma and Tenkillers Lake, Oklahoma (R4, tab 3A at 1).  According to Task Order No. 0003, work had to be completed 158 calendar days after Laster received the notice to proceed (*id*. at 33).  Task Order No. 0003 also incorporated FAR 52.211-12, Liquidated Damages—Construction (SEP 2000), and authorized the government to assess $315 for each calendar day of delay (*id*.).

4.  Laster received the notice to proceed on or about March 11, 2010, which means that the original required completion date was 158 days later on August 16, 2010 (R4, tab 10 at 3691).

5.  The parties bilaterally extended the due date to May 22, 2011 (R4, tab 3I at 302).

6.  Laster substantially completed work on March 5, 2012, 289 days later than May 22, 2011 (R4, tab 9 at 3690, tab 10 at 3691).

7.  Therefore, unless Laster can show excusable delay, the Government is entitled to liquidated damages of 289 days multiplied by the $315 daily rate—or $91,035.

2

*II. Facts Regarding Gate Painting*

8. Task Order No. 0003 attached a statement of work (SOW). SOW 01 10 00a addressed the Pine Creek Lake structure, while SOW 01 10 00b addressed the Tenkillers Lake structure (R4, tab 3A at 54, 99).

9. SOW 01 10 00a permitted Laster to remove the Pine Creek Lake gates off-site for painting, stating in paragraph 1.2(e) that Laster had to provide a detailed work plan for "[r]aising each gate to the upper level, removing the gate from the gate tower, and transporting the gate to a paint shop for painting" (R4, tab 3A at 54). SOW 01 10 00b required Laster to paint the Tenkillers Lake gates on-site, stating in paragraph 1.3.2(b) that "[a]fter the government raises each gate to the appropriate level the contractor shall secure the gate for the rehabilitation process. This work shall include fall protection over the gate slot. Also the contractor shall cover the gate slot to prevent debris from falling into the conduit" (*id*. at 99).

10. On April 13, 2010, Laster submitted its Pine Creek Lake work plan (R4, tab 6B at 441). The plan indicated that Laster would remove the Pine Creek Lake gates by crane, and transport them to the Timco north yard for painting (*id*. at 442; *see also id*. at 448). The government did not object to Laster's removal of the gates off-site for painting. On the contrary, it merely asked for information on the crane placement. (*Id*. at 444)

11. On April 16, 2010, Laster submitted its Tenkillers Lake work plan (R4, tab 6B at 453). The plan indicated that the government would hoist the gates, position them "horizontally onto a Flat bed truck, and move[] [the gates] off site to the subcontractor shop in Enid Oklahoma" for painting. *Id*. at 464; *see also id*. at 456). The government rejected Laster's Tenkillers Lake work plan, in part because:

> This plan states your intention to remove the gates from the tower and ship them to Enid, OK. There is no requirement for removal of the gates from the tower as it relates to cleaning and painting. Refer to spec section 01 27 00; Bid Item 9, "Clean and Paint". Refer to Section 01 10 00b; page 2; para 1.3.2(g) "Clean, prepare for painting[]" Therefore, removal and shipping of the gates to Enid OK is not approved.

(R4, tab 6B at 452)[2]

---

[2] It is clear that the document at R4, tab 6B at 452 is rejecting Laster's Tenkillers Lake work plan because it refers to (1) the "TK," or Tenkillers, work plan, instead of the "PC," or Pine Creek, work plan; (2) SOW 01 10 00b, which is the SOW

*III. Facts Regarding Roller Chains Inspection*

12. SOW 01 10 00b required Laster to heat treat the roller chains. After heat treatment, the roller chains had to be free of scale and cracks, "as determined by magnetic particle, florescent, or dye penetrant inspection tests." (R4, tab 3A at 111) Laster had to submit "[c]ertified test reports" to the government for review and approval (*id*. at 109, 114).

13. On about March 10, 2011, Laster provided a report to the government indicating that Ramco Machine Shop (Ramco) conducted a magnetic particle test on the roller chains, and found the roller chains were free of scales and cracks (R4, tab 6B at 1796; app. supp. R4, tab 11 at 272). On March 21, 2011, the government rejected the test report (R4, tab 6B at 1796). The government was concerned that Ramco was an engine block repair machine shop for automobiles, and not an approved testing facility (R4, tab 13C at 4031). Laster resubmitted the same report on March 31, 2011, and the government again rejected it on April 25, 2011 (R4, tab 6B at 1807). On May 5, 2011, the administrative CO emailed Laster that the government would not accept the Ramco report because the contract required "testing by a certified tester in a certified lab" (app. supp. R4, tab 11 at 274). On May 27, 2011, Laster submitted a new test report from Tulsa Gamma Ray, Inc., a government certified testing facility (R4, tab 6B at 1822-23). The government accepted that test on June 22, 2011 (*id*. at 1822).

14. While Laster submitted an expert report from William F. Connole, Mr. Connole does not show that any over-inspection of roller chains delayed overall contract completion. In particular, he does not show that any over-inspection of roller chains affected the critical path, or that there was an absence of concurrent delays. (App. supp. R4, tab 11 at 129-39)

*IV. Procedural History*

15. The government assessed $91,035 in liquidated damages due to the completion date being 289 days late (R4, tab 11 at 3753-54).

16. On April 4, 2017, Laster submitted a claim disputing the liquidated damages assessment (R4, tab 14 at 1-2).

17. On June 2, 2017, the CO issued a COFD denying the claim (R4, tab 2).

---

section for the Tenkillers Lake structure; and (3) removal to Enid, OK, which Laster proposed for the Tenkillers Lake gates (R4, tab 3A at 99, tab 6B at 442, 452, 456).

18. Laster timely filed an appeal with the Board, which we docketed as ASBCA No. 61292 (R4, tab 1).

19. On May 11, 2018, Laster submitted a clarifying claim (R4, tab 15).

20. The CO issued a COFD, denying the clarifying claim (R4, tab 16).

21. Laster timely filed an appeal with the Board, which we docketed as ASBCA No. 61828 (R4, tab 17).

DECISION

When delays are excusable, a contractor is entitled to a time extension, such that the government may not assess liquidated damages for those delays. *OCCI, Inc.*, ASBCA No. 61279, 18-1 BCA ¶ 37,062 at 180,415. The government bears the initial burden of proving that the contractor failed to meet the contract completion date, and that the period of time for which the government assessed liquidated damages was correct. (*Id.*) If the government makes such a showing, the burden shifts to the contractor to show that its failure to timely complete the work was excusable. (*Id.*) To show an excusable delay, a contractor must show that the delay resulted from "unforeseeable causes beyond the control and without the fault or negligence of the Contractor." *Sauer Inc. v. Danzig*, 224 F.3d 1340, 1345 (Fed. Cir. 2000) (internal citation omitted). "In addition, the unforeseeable cause must delay the overall contract completion; *i.e.*, it must affect the critical path of performance." (*Id.*) Further, the contractor must show that there was no concurrent delay. (*Id.* at 1347) The record establishes that the government has met its burden, and Laster has failed to meet its burden of showing that the delays for which the government assessed liquidated damages were excusable.

Here, Laster does not dispute that it failed to meet the Task Order No. 0003 completion date, or that the period of time for which the government assessed liquidated damages was correct (app. br. at 2-7). That concession is supported by the evidence (findings ¶¶ 4-7). Rather, Laster argues that the delays for which the government assessed liquidated damages were excusable because the government interfered with its means and methods of painting the service gates, and required that appellant over-inspect the roller chains (app. br. at 2-4). As discussed below, Laster has not met its burden of showing that the government interfered with its means and methods of painting the service gates, or that any roller chains over-inspection delayed overall contract completion.[3]

---

[3] The government argues that the statute of limitations bars most of Laster's claims (gov't br. at 17-20). However, we already rejected that argument in denying the

5

*I. Service Gates Painting*

Laster has not shown that the government interfered with Laster's means and methods for painting the service gates because the government's rejection of its plan to remove the Tenkillers Lake gates for painting off-site was foreseeable. Indeed, Task Order No. 0003 SOW 01 10 00b ¶ 1.3.2(b) required Laster to paint the Tenkillers Lake gates on-site. (Finding ¶ 7) As Task Order No. 0003 SOW 01 10 00b ¶ 1.3.2(b) stated, "[a]fter the government raises each gate to the appropriate level the contractor shall secure the gate for the rehabilitation process. This work shall include fall protection over the gate slot. Also the contractor shall cover the gate slot to prevent debris from falling into the conduit." (*Id.*)

Laster relies upon Task Order No. 0003 SOW 01 10 00a ¶ 1.2(e) to support its argument that Task Order No. 0003 permitted it to move the gates off-site for painting (app. br. at 2). However, SOW 01 10 00a ¶ 1.2(e) is irrelevant to the issue before the Board. The issue before the Board is whether the government caused a delay by rejecting Laster's plan to remove the Tenkillers Lake gates for painting off-site because the government only rejected Laster's Tenkillers Lake work plan—and not its Pine Creek Lake work plan—on the grounds that the plan called for off-site gate painting. (Finding ¶¶ 8-9) SOW 01 10 00a ¶ 1.2(e) is irrelevant to that issue regarding painting the *Tenkillers* Lake gates because SOW 01 10 00a ¶ 1.2(e) only addressed the *Pine Creek* Lake gates—not the *Tenkillers* Lake gates (finding ¶¶ 6-7). Therefore, Laster's reliance upon SOW 01 10 00a is misplaced.

In sum, because Task Order No. 0003 required Laster to paint the Tenkillers Lake gates—as opposed to the Pine Creek Lake gates—on-site, it was foreseeable that the government would reject Laster's plan to paint the Tenkillers Lake gates off-site (finding ¶ 7). Therefore, the government's rejection of Laster's Tenkillers Lake work plan did not constitute excusable delay. *Sauer*, 224 F.3d at 1345.

*II. Roller Chains Inspection*

Laster has not shown excusable delay due to roller chains over-inspection because it has not demonstrated that any roller chains over-inspection delayed overall contract completion. Even assuming—without deciding—that the government

government's motion to dismiss. As explained more fully in that decision, the statute of limitations does not bar Laster's claim because Laster submitted its original claim in April 2017—within six years after the earliest date that its wrongful liquidated damages assessment claim accrued when the government began assessing liquidated damages in June 2011. *Ken Laster Co.*, ASBCA No. 61292, slip op. at 4-5 (July 18, 2019) (unpublished).

required inspections not called for by Task Order No. 0003, Laster has not shown that any over-inspection delayed overall contract completion. (Finding ¶ 12) In particular, Laster has not shown that any over-inspection affected the critical path (*id.*). Nor has it demonstrated a lack of concurrent delay (*id.*). Because Laster has not shown that any over-inspection delayed overall contract completion, it has not established excusable delay. *Sauer*, 224 F.3d at 1345. Therefore, the government properly assessed liquidated damages.

## CONCLUSION

For the above reasons, the government properly assessed liquidated damages. Therefore, these appeals are denied.

Dated: July 22, 2020


JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals


I concur


RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur


OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61292, 61828, Appeal of Ken Laster Company, rendered in conformance with the Board's Charter.

Dated:  July 22, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals