# United States Court of Appeals for the Federal Circuit

---

**IN RE:  VIVINT, INC.,**
*Appellant*

---

2020-1992

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 90/020,115.

---

Decided:  September 29, 2021

---

WILLIAM MILLIKEN, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for appellant.  Also represented by JASON DANIEL EISENBERG, ROBERT GREENE STERNE.

ROBERT J. MCMANUS, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Andrew Hirshfeld.  Also represented by THOMAS W. KRAUSE, MAUREEN DONOVAN QUELER, FARHEENA YASMEEN RASHEED.

---

Before MOORE, *Chief Judge*, SCHALL and O'MALLEY, *Circuit Judges*.

MOORE, *Chief Judge*.

In 2011, Congress passed the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (codified

in scattered sections of title 35). Overhauling the patent system, Congress created new ways to reexamine the validity of issued patents. *See id.* "[I]n the post-AIA world, a patent can be reexamined either in federal court during a defense to an infringement action, in an *ex parte* reexamination by the Patent Office, or in the suite of three post-issuance review proceedings before the Patent Trial and Appeal Board." *Return Mail, Inc. v. U.S. Postal Serv.*, 139 S. Ct. 1853, 1860 (2019). Often, parties use multiple pathways to challenge validity. For example, an accused infringer may challenge validity both in district court and in an *inter partes* review (IPR), one of the three post-issuance review proceedings.

This case requires us to determine when one pathway, *ex parte* reexamination, is available to a requester who has repeatedly tried to use another pathway, IPR, to forward the same arguments. By statute, the Patent Office must find a "substantial new question of patentability" before ordering reexamination, 35 U.S.C. § 303(a), and it may deny reexamination when "the same or substantially the same prior art or arguments previously were presented to the Office," 35 U.S.C. § 325(d).[1] While the *ex parte* reexamination in this case was based on substantial new questions of patentability, the Patent Office abused its discretion and

---

[1]    Both statutes refer to the Patent Office's Director. 35 U.S.C. §§ 303(a) ("[T]he Director will determine whether . . . ."), 325(d) ("[T]he Director may . . . reject the petition . . . ."). But the Director has delegated the § 303(a) inquiry to examiners. *See* 37 C.F.R. § 1.515. And the Office of Patent Legal Administration (OPLA), a subset of the Patent Office, resolved Vivint's petitions that raised § 325(d). *See* 37 C.F.R. § 1.181(a) (allowing for petitions invoking the Director's supervisory authority), 1.181(g) (allowing for delegation of review of such petitions). The parties treat each entity as an arm of the Patent Office, and we do the same.

acted arbitrarily and capriciously under § 325(d). Thus, we vacate and remand with instructions for the Patent Office to dismiss.[2]

## BACKGROUND

In 2015, Vivint sued Alarm.com for infringing four patents, including U.S. Patent No. 6,717,513. While defending itself in district court, Alarm.com requested the Patent Office institute a litany of post-issuance review proceedings. In total, Alarm.com filed fourteen IPR petitions. Three of those petitions—IPR2015-01997, IPR2016-00129, and IPR2016-01091—challenged the validity of claims in the '513 patent, which is the only patent at issue here.

The Patent Office ultimately declined to institute IPR for the '513 patent. For the '997 and '129 petitions, the Patent Office determined that Alarm.com failed to make the threshold showing for institution: a reasonable likelihood that it would prevail on at least one challenged claim. *See* 35 U.S.C. § 314(a). For the '091 petition, however, the Patent Office declined institution on a different basis. It viewed the '091 petition as an example of "undesirable, incremental petitioning." *Alarm.com Inc. v. Vivint, Inc.*, IPR2016-01091, Paper 11, at 12 (P.T.A.B. Nov. 23, 2016) ('091 Decision). Alarm.com had "used prior Board decisions as a roadmap to correct past deficiencies." *Id.* And the Patent Office reasoned that "allowing similar, serial challenges to the same patent, by the same petitioner, risks harassment of patent owners and frustration of Congress's intent in enacting the Leahy-Smith America Invents Act." *Id.* (internal quotation marks and alterations omitted). To discourage such petitioning, the Patent Office exercised its discretion to deny institution for the '091 petition. *Id.*

---

[2]    Vivint waived its Appointments Clause challenge, so we need not remand on that basis.

More than a year later, Alarm.com requested *ex parte* reexamination of all claims of the '513 patent. Largely, this request repackaged the arguments raised in the '091 petition. Alarm.com presented four questions of patentability for the Patent Office to review:

| SNQP No. | Claim(s) | Basis for Rejection |
|---|---|---|
| 1 | 1-13, 15-21 | Obviousness: Shetty and Joao |
| 2 | 14 | Obviousness: Shetty, Joao, and Cheng |
| 3 | 8-13, 15-21 | Obviousness: Shetty, Joao, and Garton |
| 4 | 14 | Obviousness: Shetty, Joao, Cheng, and Garton |

J.A. 70. Two of those questions came directly from the '091 petition. In fact, vast swaths of the *ex parte* reexamination request copied, almost word for word, the '091 petition. *Compare* J.A. 84–125, 132–36, *with Alarm.com Inc. v. Vivint, Inc.,* IPR2016-01091, Paper 1, at 16–57, 64–67 (P.T.A.B. May 24, 2016). For the two other questions, which related only to claim 14, Alarm.com replaced a reference cited in the '091 petition, Britton, with another reference, Cheng. But it did so only after the Patent Office had addressed Britton in three related IPRs.

Based on Alarm.com's request, the Patent Office ordered reexamination for all claims of the '513 patent. It concluded that Alarm.com had raised substantial new questions of patentability despite the prior IPRs:

> [The Patent Office] notes that the Shetty, Joao, and Garton references are now presented in a new light compared to the earlier examinations and proceedings in view of the material new argument and interpretation presented in the Request. Accordingly, the use of these references in this reexamination is proper.

J.A. 982. The Patent Office did not, however, cite § 325 or discuss its discretion under that provision. *See* J.A. 976–84.

Vivint then petitioned the Patent Office under 37 C.F.R. § 1.181, seeking dismissal of the *ex parte* reexamination. It argued that the Patent Office has authority to deny reexamination under § 325(d) because that statute applies to *ex parte* reexaminations and IPRs with equal force. It also argued that each factor the Patent Office uses when exercising its discretion under § 325(d) counseled in favor of dismissal.[3] Finally, in Vivint's view, the Patent Office could not decline to institute IPR based on abusive filing practices, yet grant reexamination on essentially the same facts.

The Patent Office dismissed Vivint's petition, holding that any § 1.181 petition raising 35 U.S.C. § 325(d) must be filed before reexamination is ordered. Based on §§ 304, 305, and 325(d), the Patent Office reasoned that it had no authority to consider petitions filed after reexamination was ordered. While that reasoning drove the Patent Office's dismissal, the Patent Office also "provide[d] additional comments . . . in order to clarify [its] policy" on several points. J.A. 10847.

In a second petition under § 1.181, Vivint sought reconsideration of the § 325(d) issue. It argued that raising § 325(d) in a petition would have been impossible before *ex parte* reexamination was ordered, so the Patent Office should not have faulted Vivint for its timing. And Vivint argued that, even if the Patent Office generally lacks authority to terminate a reexamination, it had authority to do so in this case under the Administrative Procedure Act

---

[3]    Although Vivint purported to discuss factors relating to § 325(d), it actually discussed the eight § 314(a) factors.

(APA). Vivint also claimed the Patent Office acted arbitrarily and capriciously by applying the same law to the same facts and reaching a different conclusion.

The Patent Office denied Vivint's second § 1.181 petition. It reasoned that, though Patent Office rules prevented Vivint from filing a § 1.181 petition before *ex parte* reexamination was ordered, Vivint could have sought waiver of those rules. Also, the Patent Office rejected Vivint's APA arguments, viewing them as an attempt to circumvent statutory limits. Likewise, the Patent Office explained how granting *ex parte* reexamination was not inconsistent with denying IPR. It contrasted the statutory frameworks used to make each decision. And it reasoned that, even if the IPR was denied based solely on § 325(d) considerations, the differences between *ex parte* reexamination and IPR could justify such an outcome. But, like the first petition, the Patent Office's ultimate decision focused on the timing of Vivint's petition as the basis for denying relief. J.A. 12217.

Ultimately, an examiner issued a final rejection for all claims of the '513 patent, and Vivint appealed to the Board. The Board affirmed. In doing so, it held that Alarm.com's request raised substantial new questions of patentability, but it did not address § 325(d). Vivint appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

"We review the Board's decisions under the standard[s] set forth in the [APA]." *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1370 (Fed. Cir. 2020). Those standards require us to "decide all relevant questions of law" and to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Our review under the APA is not limited to the four corners of a final agency action; we may also review "preliminary, procedural, or intermediate agency

action[s] or ruling[s]" that are "not directly reviewable" before a final action.  5 U.S.C. § 704.

I

To order reexamination, the Patent Office must identify a "substantial new question of patentability."  35 U.S.C. § 303(a).  Vivint challenges the Patent Office's outcome on that score, which is a question of law that we review without deference.  *See In re Swanson*, 540 F.3d 1368, 1381 (Fed. Cir. 2008) ("[T]he ultimate question of whether the reexamination is based on a substantial new question of patentability . . . remains a question of law.").[4]  Vivint argues that, because the *ex parte* reexamination request repackaged arguments in the '091 petition, it did not present a *new* question of patentability.  We do not agree.

A

The text of § 303(a) provides little guidance on the meaning of the word new in the phrase "substantial new question of patentability":

> Within three months following the filing of a request for reexamination under the provisions of section 302, the Director will determine whether *a substantial new question of patentability* affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. On his own initiative, and any time, the Director may determine whether *a substantial new question of patentability* is raised

---

[4]    While the substantial-new-question inquiry may involve underlying fact questions, which we would review for substantial evidence, we see no such questions here. *See In re Swanson*, 540 F.3d at 1381 (holding the scope of an examiner's prior consideration of a reference is a question of fact).

> by patents and publications discovered by him or cited under the provisions of section 301 or 302. The existence of *a substantial new question of patentability* is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

(emphasis added). It neither defines the word new nor provides examples of questions of patentability that would qualify as new.

The broader statutory context, however, clarifies that a question of patentability is new until it has been considered and decided on the merits. *See, e.g.*, *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). The Patent Office has discretion to deny an *ex parte* reexamination request that raises an argument that has been previously *presented* to it:

> In determining whether to institute or order a proceeding under . . . [§ 303(a)] . . . , the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously *were presented* to the Office.

35 U.S.C. § 325(d) (emphasis added). That discretion would be meaningless if a question of patentability was not new simply because it had been previously presented to the Patent Office. Therefore, more is required for a question of patentability to no longer be new; the Patent Office must have considered and decided that question on the merits.

While not binding on this court, the Manual of Patent Examining Procedure (MPEP) supports that conclusion. MPEP § 2242(I) defines the word new in § 303(a) by describing the three circumstances in which a question is not new:

> a substantial *new* question of patentability as to the claim is present, unless the same question of patentability has already been: (A) decided in a final holding of invalidity by a federal court in a decision on the merits involving the claim, after all appeals; (B) decided in an earlier concluded examination or review of the patent by the Office; or (C) raised to or by the Office in a pending reexamination or supplemental examination of the patent.

(emphasis in original). In the first two cases, "the same question of patentability" must have "already been . . . decided" by the Patent Office, not merely raised to or considered by that office. *Id.* While the last category does include questions "raised to" the Patent Office, it is limited to questions in "*pending* reexamination[s] or supplemental examination[s]." *Id.* (emphasis added). In those cases, the Patent Office is currently considering the question of patentability on the merits, which prevents it from being new.

Vivint focuses on another portion of MPEP § 2242(I), which defines the phrase "an earlier concluded examination or review." It argues that a catchall category in that definition—"any other contested [Patent] Office proceeding which has been concluded and which involved the patent"—includes decisions denying institution. Even assuming that conclusion, a question must have been "decided in an earlier concluded examination," not merely raised to the Patent Office, in order to meet § 2242(I)'s plain terms. Ultimately, nothing Vivint points to in the MPEP undermines our holding that a question of patentability is new until it has been considered and decided on the merits.

## B

Alarm.com's request raised four questions of patentability, and we hold each of those questions was new under § 303(a). In each case, the Patent Office has never considered the relevant question of patentability on the merits.

Vivint's core argument is that "the invalidity challenges raised in Alarm.com's reexamination request had already been considered and rejected by the Board in the" '091 Decision. Appellant's Br. at 18, 20. But that argument is twice flawed. First, the '091 petition did not raise two of the four questions of patentability raised in the *ex parte* reexamination request. In the *ex parte* reexamination request, Alarm.com challenged the patentability of claim 14 on two bases, both of which relied on the Cheng reference. But neither of those bases had been presented to the Patent Office before. Nor had the Patent Office ever considered the patentability of claim 14 in light of Cheng. That, alone, renders the claim 14 questions new.

Second, the Patent Office never considered or decided the questions of *patentability* raised in the '091 petition. To be sure, the '091 petition presented several questions of patentability, two of which were identical to questions raised in the *ex parte* reexamination request. But the Patent Office may deny institution without resolving any questions of patentability. *See, e.g.*, 35 U.S.C. § 325(d). And that is precisely what the Patent Office did in the '091 Decision; it relied on Alarm.com's abusive filing practices to deny institution. The Patent Office did not decide the questions of patentability raised in the '091 petition. Instead, it found Alarm.com's serial filing to amount to an abuse of process and, therefore, refused to address the merits of the patentability arguments. Thus, we hold the *ex parte* reexamination in this case was based on substantial new questions of patentability.

## II

Even when an *ex parte* reexamination request presents a substantial new question of patentability, the Patent Office "may . . . reject the . . . request because the same or substantially the same prior art or arguments previously were *presented* to" it. 35 U.S.C. § 325(d). Vivint contends the Patent Office abused its discretion and acted

arbitrarily and capriciously by ordering reexamination, and thereafter, refusing to terminate that proceeding. We agree.

A

Initially, we reject the government's argument that § 325(d) decisions are not reviewable. *See* Appellee's Br. at 31–33.[5] At base, the government argues § 325(d) decisions are committed to agency discretion based on that statute's permissive language. But permissive language, alone, does not render a question committed to agency discretion under 5 U.S.C. § 701(a)(2). *See, e.g.*, *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1401 (D.C. Cir. 1995). "As we have held, § 701(a)(2) provides a very narrow exception to the presumption of judicial review, and is applicable only in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Honeywell Int'l Inc. v. Arkema Inc.*, 939 F.3d 1345, 1348 (Fed. Cir. 2019) (quotation marks omitted). We are not persuaded that § 325(d) meets that taxing standard.

Accordingly, we review the Patent Office's § 325(d) decision under the APA. *See* 5 U.S.C. § 706. Under the APA, we must set aside an agency action that is either an abuse of discretion or arbitrary and capricious. *Id.* § 706(2)(A). Agency action is an abuse of discretion when it "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly

---

[5]    Under 35 U.S.C. § 303(c), "[a] determination by the Director pursuant to subsection (a) of this section that no substantial new question of patentability has been raised will be final and nonappealable." The Director does not invoke that provision here, for good reason. The provision does not apply to a determination that a substantial new question of patentability *has* been raised, and it does not apply to a determination under 35 U.S.C. § 325(d).

erroneous fact findings; or (4) involves a record that contains no evidence on which the [agency] could rationally base its decision." *Honeywell*, 939 F.3d at 1348. A decision is arbitrary and capricious when the agency fails to articulate a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## B

Here, we must set aside the Patent Office's § 325(d) determination. A legal error—the Patent Office's narrow interpretation of its authority to reconsider orders granting reexamination—infected that determination. And, in light of the '091 Decision, it was arbitrary and capricious for the Patent Office to order reexamination over § 325(d), or, at minimum, refuse to terminate reexamination once Vivint requested it do so. Because the Patent Office should not have ordered reexamination, we vacate and remand with instructions to dismiss.

## 1

In dismissing and denying Vivint's § 1.181 petitions, the Patent Office relied primarily on its alleged lack of authority to terminate an *ex parte* reexamination. *See* J.A. 10847. We do not agree with the Patent Office's assessment of its authority. The Patent Office has authority to reconsider its decision ordering *ex parte* reexamination based on § 325(d). "The power to reconsider is inherent in the power to decide." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008). We have applied that principle to hold the Patent Office has authority to reconsider IPR institution decisions. *See, e.g.*, *Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1385 (Fed. Cir. 2016); *cf. GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309, 1313 (Fed. Cir. 2015). We reasoned that "nothing in the statute or regulations applicable [to CBMs] clearly deprives the Board of that default authority." *GTNX, Inc.*, 789 F.3d at 1313. And we likewise see

nothing in the statutes or regulations preventing the Patent Office from reconsidering a decision ordering *ex parte* reexamination. *See, e.g.*, 35 U.S.C. §§ 301–07 (governing *ex parte* reexamination); 37 C.F.R. § 1.183 (allowing for waiver of Patent Office rules). Thus, the Patent Office abused its discretion by denying Vivint's § 1.181 petitions based on a contrary legal conclusion: that the Patent Office did not have authority to consider those petitions.

While the Patent Office purported to consider Vivint's § 325(d) arguments on the merits, its legal error infected that analysis. In its first § 1.181 decision, the Patent Office held that it did "not have the discretion to terminate an ongoing reexamination on the basis set forth in 35 U.S.C. [§] 325(d) if no petition requesting such relief is filed until *after* reexamination has been ordered." J.A. 10847 (emphasis in original). And that holding drove the Patent Office's dismissal decision. *See* J.A. 10856. The remainder of the first decision included "additional comments . . . in order to clarify [Patent] Office policy," but those comments were tangential to the Patent Office's decision. J.A. 10847. Indeed, the Patent Office reincorporated its erroneous legal conclusion into its policy conclusions. J.A. 10853 ("For *all* of the reasons set forth above, the determination by the [Patent] Office not to exercise its discretion under [§ 325(d)] in the present *ex parte* reexamination proceeding is not inconsistent with [IPR] practice." (emphasis added)).

The Patent Office's second § 1.181 decision proceeded in much the same way. *See* J.A. 12210–19. The Patent Office stressed that Vivint "had the opportunity . . . to file a petition limited to issues involving 35 U.S.C. [§] 325(d) prior to the issuance of the order for reexamination, but chose not to do so." J.A. 12213, 12217. And it faulted Vivint for failing to seek waiver of the Patent Office rules that prevented such a filing. To be sure, the second § 1.181 decision mentioned Vivint's § 325(d) arguments. And the Patent Office concluded that it had "reviewed the record and declined to reject the request [for *ex parte*

reexamination] under [§ 325(d)]" at the outset of the *ex parte* reexamination.  J.A. 12217.  But at the same time, the Patent Office again relied on its erroneous legal conclusion: "that once the [*ex parte* reexamination] order has issued, the Office is required by statute to conduct reexamination."  J.A. 12217.  And like its decision on the first § 1.181 petition, the Patent Office incorporated its legal error into its ultimate conclusion.  J.A. 12217 ("For all the reasons set forth above, patent owner's [petition] is denied." (emphasis omitted)).[6]

2

Our finding that the Patent Office misunderstood the scope of its authority to terminate reexamination once instituted would normally prompt us to vacate the Patent Office's decision so that it may exercise the authority as now properly understood.  Doing so in this case would be a waste of everyone's resources, however.  It would be arbitrary and capricious for the Patent Office to do anything on remand other than terminate the reexamination.  Agency action that "departs from established precedent without a reasoned explanation [is] arbitrary and capricious."  *Fred Beverages, Inc. v. Fred's Cap. Mgmt. Co.*, 605 F.3d 963, 967 (Fed. Cir. 2010) (holding Trademark Trial and Appeal Board acted arbitrarily by denying leave when "[t]here [wa]s no basis on which to distinguish the circumstances of the present case from those in which" leave was granted).  After the '091 Decision, it was unreasonable for the Patent

---

[6]    The government argues Vivint identified no basis for the Patent Office to use its discretionary power of reconsideration.  But avoiding arbitrary and capricious conduct, *see infra* at 14–16, is certainly a valid basis for reconsideration.

Office to order reexamination, and, once ordered, to refuse to terminate it.

The '091 Decision focused on Alarm.com's abusive filing practices. The Patent Office viewed the '091 petition as "a case of undesirable, incremental petitioning." '091 Decision at 12. And it noted how it regularly denies petitions, both in IPRs and in other post-issuance review proceedings, when petitioners "have used prior Board decisions as a roadmap to correct past deficiencies." *Id.* The Patent Office did discuss the Board's limited resources, but only in the context of Alarm.com's abusive filing practices. *Id.* at 13–14 (quoting *LG Elecs. Inc. v. Core Wireless Licensing S.A.R.L.*, No. IPR2016-00986, Paper 12, at 6–7 (P.T.A.B. Aug. 22, 2016)). Likewise, the Patent Office focused on Alarm.com's filing practices when discussing the remaining § 314(a) factors. *Id.* at 9 (noting, when discussing factor 3, that the '091 petition was Alarm.com's third petition), 10 (discussing the '091 petition's timing, which allowed Alarm.com to use related IPRs as a roadmap to fix deficiencies).

Though the Patent Office ostensibly applied § 314(a) to deny institution, it actually relied on § 325(d) considerations for its core analysis. *See id.* at 11–12 (citing and applying § 325(d)). It reasoned that "allowing ***similar***, serial challenges to the same patent, by the same petitioner, risks harassment of patent owners and frustration of Congress's intent in enacting the [AIA]." *Id.* at 12 (citation omitted) (emphasis added). That is the heart of a § 325(d) analysis. And the Patent Office explicitly placed that reasoning within the § 325(d) framework:

> [I]n making the determination whether Petitioner's current challenges present the same or substantially the same art or arguments as those previously presented to the Office, we may consider whether Petitioner uses information gleaned from

our earlier decisions to bolster challenges it advanced unsuccessfully.

*Id.* at 11–12.  Fundamentally, the '091 decision denying institution relied on a § 325(d) analysis.

Rather than learn its lesson, however, Alarm.com continued to engage in abusive filing practices after the '091 Decision.  It copied, word-for-word, two grounds from the '091 petition—the very petition deemed "a case of undesirable, incremental petitioning"—into its *ex parte* reexamination request.  And for the portions it did not copy, Alarm.com "used prior Board decisions as a roadmap to correct past deficiencies."  '091 Decision at 12.  Indeed, the *ex parte* reexamination request was a more egregious abuse than the '091 petition under the same considerations already analyzed by the Board.  The '091 petition was the third filing in a string of "undesirable, incremental petitioning" practices.  *Id.*  And Alarm.com's *ex parte* reexamination request was another, fourth iteration of Alarm.com's abuse of process.  It was, therefore, arbitrary for the Patent Office to grant reexamination after denying institution of the '091 IPR based on § 325(d).

The government argues that, because IPR and *ex parte* reexamination involve different procedures and policies, the Patent Office is free to grant an "undesirable, incremental" *ex parte* reexamination request even after it denies a nearly identical IPR petition that was deemed "a case of undesirable, incremental petitioning."  We do not agree.  Our holding today is narrow.  Section 325(d) applies to both IPR petitions and requests for *ex parte* reexamination.  Thus, the Patent Office, when applying § 325(d), cannot deny institution of IPR based on abusive filing practices then grant a nearly identical reexamination request that is even more abusive.  We see no difference between the IPR and *ex parte* reexamination processes that would justify such conduct and nothing short of termination of the reexamination would be appropriate.

Our ruling today is limited.  As the Director notes as part of his argument about the difference in character between the *ex parte* reexamination regime and the IPR regime, there can be a *public* interest in reexamination that goes beyond the interests, or propriety of behavior, of a particular challenger.  That is reflected most expressly in the statute's grant to the Director of the authority to launch an *ex parte* reexamination "[o]n his own initiative."  35 U.S.C. § 303(a) ("On his own initiative, and any time, the Director may determine whether a substantial new question of patentability is raised by patents and publications discovered by him or cited under the provisions of section 301 or 302.");  *see* 37 C.F.R. § 1.520 (providing for Director's "own initiative" authority).  Section 303(a) makes clear that the Director's "own initiative" authority provides a separate, supplemental path to an *ex parte* reexamination, beyond the § 302 "request" path, even where there is a § 302 request: the statute, as amended in 2011, expressly permits a Director's "own initiative" decision to rely on information supplied in a request "under the provisions of section . . . 302."  35 U.S.C. § 303(a); *see SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018) ("In the ex parte reexamination statute, Congress embraced an inquisitorial approach, authorizing the Director to investigate a question of patentability '[o]n his own initiative, and at any time.' § 303(a).").  Notably, too, the second sentence of § 325(d), the basis for the discretion at issue in this case, does not apply to such "own initiative" authority; it applies only to a "petition or request," which the Director may "reject" because of serial filings of a challenger.  35 U.S.C. § 325(d).  The Director in this case, however, did not invoke the "own initiative" authority.  Nor, apart from the "own initiative" authority, did he set forth a reasoned basis for exercising his § 325(d) discretion to launch the *ex parte* reexamination even accepting that Alarm.com was engaging in continuation of its abusive serial filing.  Accordingly, we are not holding that the Director may never launch a

reexamination even when a particular challenger has engaged in improper serial filing.

## CONCLUSION

While the *ex parte* reexamination in this case was based on substantial new questions of patentability, we must set aside the Patent Office's § 325(d) decision under the APA. That decision was an abuse of discretion and was arbitrary and capricious. Therefore, the Patent Office should not have ordered reexamination, or, at minimum, should have terminated the reexamination once Vivint requested that it do so. Accordingly, we vacate and remand with instructions for the Patent Office to dismiss.

## VACATED AND REMANDED

### COSTS

No costs.